# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SHAWN FLYNN,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>JAMES DZURENDA, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 2:19-CV-0213-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 85] |

This case involves a civil rights action filed by Plaintiff Shawn Flynn ("Flynn") against Defendants Romeo Aranas ("Aranas"), Gregory Bryan ("Bryan"), Charles Daniels ("Daniels"), James Dzurenda ("Dzurenda"), Bob Faulkner ("Faulkner"), Henry Landsman ("Landsman"), Michael Minev ("Minev"), Harold Wickham ("Wickham"), and Brian Williams ("Williams") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 85, 87, 89.)[2] Flynn opposed the motion, (ECF No. 90), and Defendants replied. (ECF No. 91.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 85), be granted.

## I.　FACTUAL BACKGROUND

Flynn is formerly an inmate in the custody of the Nevada Department of Corrections ("NDOC"). On February 5, 2019, Flynn filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Flynn was incarcerated at the High Desert State Prison ("HDSP") and the Southern Desert Correctional Center ("SDCC"). (ECF No. 6.) Specifically, Flynn alleges an Eighth Amendment deliberate indifference to

---

[1]　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]　ECF No. 87 consists of Flynn's medical records filed under seal. ECF No. 89 is an erratum to the motion for summary judgment.

serious medical needs claim against all Defendants based on denial of treatment for Hepatitis C ("Hep-C"), as well as intentional and negligent infliction of emotional distress claims against Defendants Bryan and Landsman. (ECF No. 61.)

Hep-C is a blood borne pathogen transmitted primarily by way of percutaneous exposure to blood. Chronic Hep-C is diagnosed by a qualified medical practitioner. Chronic Hep-C results in liver fibrosis. (ECF No. 85-6 at 2 (Declaration of Dr. Minev).) Fibrosis is the initial stage of liver scarring. (*Id.*) Chronic Hep-C builds up fibrosis (scar tissue) in the afflicted person's liver. (*Id.*) When the fibrosis increases, it can lead to cirrhosis of the liver, a liver disease that forestalls common liver function. (*Id.*) When liver cells are not functioning, certain clinical signs will appear on the patient, which include but are not limited to: (1) spider angiomata (vascular lesions on the chest and body); (2) palmar erythema (reddening of the palms); (3) gynecomastia (increase in breast gland size); (4) ascites (accumulation of fluid in the abdomen); and (5) jaundice (yellow discoloration of the skin and mucous membranes). (*Id.*)

Medical Directive ("MD") 219 governs treatment of Hep-C at the NDOC. (*See* ECF No. 85 at 7.) At the time Flynn filed his initial grievance related to his Hep-C treatment, inmates that tested positive for Hep-C were enrolled in the Infectious Disease Chronic Clinic for Hepatitis C. (*Id.*) A committee made up of at least three senior members of the medical department reviewed each Hep-C positive inmate and evaluated treatment options. (*Id.*)

A non-invasive method of procuring a patient's Chronic Hep-C progression, in addition with the clinical signs, is through the Aspartate Aminotransferase Platelet Ratio Index ("APRI") formula. (ECF No. 85-6 at 3.) To calculate a patient's APRI score, the patient's blood platelet count, which is obtained through a blood test, is necessary. (*Id.*) An APRI score is calculated using the AST to Platelet Ratio Index. (*Id.*) NDOC prioritized treatment based on an inmates APRI score. (ECF No. 85 at 7.) Inmates with an APRI score greater than 2 were prioritized for direct acting antiviral treatment ("DAA"). (*Id.*) DAA treatment, such as Epclusa, is an FDA-approved treatment for Hep-C. (ECF No. 85-1 at

17 (defining DAA).) Inmates with a score of less than 2 were not prioritized for the Hep-C DAA treatment protocols but did receive treatment and monitoring through the Hep-C Clinic. (ECF No. 85 at 7.)

The current version of MD 219 ensures each inmate has been or is tested for Hep-C, and that those inmates who test positive, and who do not make the voluntary choice to opt out of treatment, will be treated with DAAs. (ECF No. 85-1 at 17-22.) The policy applies to all inmates unless there are medical issues that would make doing so cause more harm. (*Id.*) MD 219 established three priority levels for DAA treatment. This priority level system guarantees that all Hep-C patients will receive DAAs as needed and required to treat their condition, while at the same time providing medical personnel with discretion and flexibility to safeguard that those in a lower level of priority obtain expedited DAA treatment when in the sound judgment of the medical provider examining the patient it is determined that it is medically necessary. (*Id.* at 20.)

Flynn claims he has had Hep-C since 2011 and advised NDOC upon his arrival in 2017 that was he Hep-C positive. (ECF Nos. 61, 85, 87-2.) An abdominal ultrasound performed on March 28, 2017, showed Flynn's liver was "unremarkable" and "no acute abnormality is visualized." (ECF No. 87-1 at 2 (sealed).) Blood tests conducted in August 2018 revealed Flynn's liver enzymes were within normal limits. (ECF No. 87-1 at 7, 16-17 (sealed).) In January 2019, his APRI score was 0.44 and he did not exhibit any symptoms of decreased liver functioning. (ECF No. 85-6 at 4.) Therefore, Flynn was not a candidate for the advanced NDOC Chronic Disease Clinic for Hep-C at that time. (*Id.*; ECF No. 87-1 at 7 (sealed).)

In January 2019, Flynn filed a grievance claiming he needed treatment for his Hep-C. (ECF No. 85-2.) Flynn received a response that treatment was "determined unnecessary" at this time. (*Id.*) On May 23, 2019, Dr. Landsman evaluated Flynn who determined that because Flynn was Hepatitis B reactive in addition to being positive for Hep-C that DAA treatment was contraindicated. (ECF No. 87-3 (sealed).) Blood tests conducted on June 24, 2019, revealed a fibrosis score of F3 – "bridging fibrosis". (ECF

No. 87-1 at 23 (sealed).) On August 11, 2019, Flynn was enrolled in the Chronic Disease Clinic for Hep-C. (ECF No. 87-1 at 25-26 (sealed).) On April 15, 2020, Flynn's APRI score was 0.76. (Id. at 27.) The same day, a request for DAA treatment was submitted to the NDOC Utilization Review Panel. (*Id.* at 11.) Before the request could be decided, Flynn was released from custody of the NDOC in June of 2020. (ECF No. 85-6 at 4; ECF No. 90 at 11.) However, since his release from NDOC custody, Flynn has received DAA treatment. (ECF No. 90 at 5, 11.)

Defendant Williams, Deputy Director for the NDOC, Defendant Dzurenda, former Director of the NDOC, Defendant Faulkner, Director of Nursing Services I for the NDOC, and Defendant Aranas, former Medical Director for the NDOC, each filed declarations in support of the motion for summary judgment, stating that they did not recall having direct interactions with Flynn and did not treat Flynn. They further stated they did not deny treatment to Flynn, as decisions for treatment were made by the Utilization Review Panel or the treating physician. (ECF Nos. 85-3, 85-4, 85-5, 85-10.) Defendant Dzurenda further stated that neither he, nor his successor, Current Director of the NDOC Charles Daniels, were responsible for the formulation of Medical Directives. (ECF No. 85-4.)

Defendant Minev, NDOC's current Medical Director, filed a declaration in support of the motion for summary judgment, stating as follows: if a patient's APRI score is above 0.5, there is likely some liver damage (fibrosis) and if the APRI score is above 1.5, the patient likely has or is quickly approaching cirrhosis of the liver. The APRI score is not definitive but is a reliable indicator of liver fibrosis. As part of his duties, Minev oversees the Chronic Hep-C treatment program at HDSP. He has reviewed test results and medical records of NDOC inmates to determine who required advanced forms of Hep-C treatment. In addition to APRI scores, Minev also considers the inmates' clinical signs of forestalled or reduced liver function. He almost always declined to recommend an NDOC inmate with Hep-C, who has an APRI score near or below 1.0 for advanced forms of Hep-C treatment due to risk that drug intervention may cause to a patient with Hep-C. All inmates who test positive for Hep-C and are otherwise medically indicated receive advanced treatment.

4

(ECF No. 85-6.)

Moreover, as to Flynn specifically, Minev stated he reviewed Flynn's medical records and can attest that Flynn suffered from Chronic Hep-C and his APRI score, based on blood test results in January 2018, was 0.44. Flynn did not exhibit any symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. Based on Flynn's APRI score and lack of clinical signs indicating decreased liver function, Flynn was not a candidate for Hep-C treatment at the time of his grievance. Flynn has since left the prison system, so Minev has no opinion of Flynn's current condition. (ECF No. 85-6 at 4.)

Defendant Wickham, former Deputy Director for the NDOC, filed a declaration in support of the motion for summary judgment, stating that he had no authority to order treatment for Hep-C for Flynn, as he was not part of the committee that could have ordered treatment, and Wickham was unaware of Flynn's medical conditions, including his Hep-C status. (ECF No. 85-7.)

Defendant Landsman, former senior physician at SDCC, filed a declaration in support of the motion for summary judgment, stating Flynn was under the continuous care of many doctors employed by the NDOC and has been seen and treated for various ailments. Landsman is not, and has never been, a member of the Hepatitis Review Committee tasked with the responsibility of approving treatment for Hep-C. Landsman has not denied Flynn treatment, but he has not prescribed advanced treatment for Hep-C. Landsman referred Flynn to outside medical care when indicated. Landsman did not diagnose Flynn as suffering from advanced cirrhosis of the liver or as suffering from symptoms associated with Hep-C infection. In examinations of Flynn, Landsman never noted: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. Landsman evaluated Flynn on May 23, 2019, at that time he appeared healthy and his physical examination was normal. In addition to Hep-C, Flynn also suffered from Hepatitis B. In Landsman's medical opinion, "treatment with the [DAA] medication was contraindicated in his case. In [Landsman's] opinion and experience, the DAA treatment

could be fatal in his case. Therefore, [he] recommend[s] against the treatment; but [he] made no recommendation to Hepatitis Committee who was sole authority." (ECF No. 85-8.)

Defendant Bryan, former senior physician at HDSP, filed a declaration in support of the motion for summary judgment, stating Flynn was under the continuous care of many doctors employed by the NDOC and has been seen and treated for various ailments. Bryan is not, and has never been, a member of the Hepatitis Review Committee tasked with the responsibility of approving treatment for Hep-C. Bryan has not denied Flynn treatment. Bryan did not prescribe advanced treatment for Hep-C because at the time he saw Flynn he did not qualify for advanced treatment—his APRI score, at the time Bryan saw him was 0.38, which is not an indication of advanced cirrhosis, and is extremely low. Bryan did not diagnosis Flynn as suffering from advanced cirrhosis of the liver or as suffering from symptoms associated with Hep-C infection. (ECF No. 85-9 at 2.) Additionally, in support of his opposition to the motion for summary judgment, Flynn includes responses to interrogatories from Bryan. (ECF No. 90-1.) Bryan states he saw Flynn on three occasions and did not form an opinion that DAA treatment was indicated for Flynn's Hep-C and his medical records supported medical decisions. (*Id.* at 4, 6.) Bryan further states he did not see any evidence of "harm" to Flynn by any alleged delay in receiving treatment. (*Id.* at 4.) Finally, Bryan states Flynn was seen for "very vague abdominal complaints" but showed no evidence of jaundice or other Hep-C symptoms. (*Id.* at 7.)

In support of his opposition to the motion for summary judgment, Flynn includes the expert report of Dr. Amanda Cheung. (ECF No. 90-3.) Dr. Cheung's report discusses the standard of care for Hep-C treatment. The summary of her report is as follows:

> Based on the review of the medical documents available on these six individuals, it is my opinion that Hep-C treatment was delayed. If these individuals were seen in the outpatient sector, treatment would have been recommended immediately upon diagnosis regardless of fibrosis staging. Currently, the purpose of fibrosis staging is to determine the correct type and length of therapy, rather than to determine whether to provide therapy.

6

(*Id.* at 6.) Dr. Cheung's report additionally states that "chronic Hep-C infection carries increased morbidity and mortality risk. Once there is progression to cirrhosis, patients may develop liver failure and liver cancer. Even after Hep-C cure, the risk of liver cancer persists. Thus, the ultimate goal is to achieve Hep-C cure prior to development of cirrhosis." (*Id.* at 5.) Importantly, Dr. Cheung's report <u>does not</u> address whether Flynn suffered any harm based on or because of an alleged delay in treatment.

Finally, in support of his opposition, Flynn provides the deposition transcripts from Defendant Minev and from Defendant's expert, Dr. Chad Zawitz. (ECF Nos. 90-4, 90-6.) The depositions focus more generally on treatment of Hep-C and NDOC's policy but do not specifically address Flynn. (*See id.*)

II.   **PROCEDURAL HISTORY**

On February 5, 2019, Flynn initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Flynn was incarcerated at HDSP and SDCC. (ECF Nos. 1, 6.) On June 11, 2020, Flynn, through counsel, filed a second amended complaint. (ECF No. 61.) The second amended complaint alleges an Eighth Amendment deliberate indifference to serious medical needs claim against all Defendants based on denial of treatment for Hepatitis C ("Hep-C"), as well as intentional and negligent infliction of emotional distress claims against Defendants Bryan and Landsman. (*Id.*)

Around the same time Flynn filed his complaint, many other individuals in the custody of the NDOC filed similar actions alleging that NDOC's policy for treating Hep-C amounts to deliberate indifference in violation of the Eighth Amendment. (ECF No. 33.) As a result, the Court consolidated numerous actions, including Flynn's case, for the purpose of conducting consolidated discovery. (*Id.; see also In Re HCV Prison Litigation*, 3:19-CV-00577-MMD-CLB.)

Following an additional period of discovery, on May 16, 2022, Defendants filed their motion for summary judgment arguing Flynn cannot prevail as: (1) Flynn was treated appropriately and in accordance with the medical directives and standards of care; (2)

many of the Defendants were not treating physicians and thus did not personally participate in the alleged constitutional violations; (3) Flynn's emotional distress claims fail as Flynn cannot show any actions on the part of Defendants that would qualify as extreme and outrageous conduct; and (4) Defendants are entitled to qualified immunity. (ECF No. 85.) Flynn opposed the motion, (ECF No. 90), and Defendants replied. (ECF No. 91.)

## III.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury

could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

**IV.   DISCUSSION**

On May 16, 2022, Defendants filed the instant motion for summary judgment arguing: (1) Defendants were not deliberately indifferent to Flynn's serious medical needs; (2) Faulker, Aranas, Minev, Wickham, Daniels, Williams, and Dzurenda had no personal participation in the alleged constitutional violations; (3) Flynn cannot show extreme and outrageous conduct of any of the Defendants; and (4) alternatively, Defendants are entitled to qualified immunity. (ECF No. 85.) In opposition, Flynn asserts that Defendants denied him Hep-C treatment for years—a medically unacceptable course of treatment

under the circumstances—and did so knowing the excessive risks to his health. (ECF No. 90.) Flynn asserts that Defendants' denial of Hep-C treatment harmed him, leading him to ultimately develop cirrhosis of the liver.[3] (*Id.*) Finally, Flynn asserts that a jury should be allowed to decide his claim of emotional distress. (*Id.*)

### A. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

///

---

[3]   Although Flynn claims to have cirrhosis, the Court cannot find evidence supporting this in the record.

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists and make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

**1.   Analysis**

Starting with the objective element, the parties agree that Flynn's Hep-C constitutes a "serious medical need." However, Defendants argue summary judgment

1   should be granted because Flynn cannot establish the second, subjective element of his
2   claim. Specifically, Defendants argue they were not deliberately indifferent to Flynn's
3   condition. Under the subjective element, there must be some evidence to create an issue
4   of fact as to whether the prison official being sued knew of, and deliberately disregarded
5   the risk to Flynn's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to
6   establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this
7   requires Flynn to "demonstrate that the defendants' actions were both an actual and
8   proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013)
9   (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098- 1101 (9th Cir. 2010), *vacated by City*
10  *of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th
11  Cir. 2011).

12          Here, as detailed above, Defendants submitted authenticated and undisputed
13  evidence regarding the medical treatment Flynn received while incarcerated related to his
14  Hep-C. (*See* ECF Nos. 87-1, 87-2, 87-3 (sealed).) According to this evidence, Flynn
15  advised NDOC upon his arrival in 2017 that was he Hep-C positive. (ECF Nos. 61, 85,
16  87-2.) An abdominal ultrasound performed on March 28, 2017, showed Flynn's liver was
17  "unremarkable" and "no acute abnormality is visualized." (ECF No. 87-1 at 2 (sealed).)
18  Blood tests conducted in August 2018 revealed Flynn's liver enzymes were within normal
19  limits. (ECF No. 87-1 at 7, 16-17 (sealed).) In January 2019, his APRI score was 0.44
20  and he did not exhibit any symptoms of decreased liver functioning. (ECF No. 85-6 at 4.)
21  Therefore, Flynn was not a candidate for the advanced NDOC Chronic Disease Clinic for
22  Hep-C at that time. (*Id*.; ECF No. 87-1 at 7 (sealed).)

23          In January 2019, Flynn filed a grievance claiming he needed treatment for his Hep-
24  C. (ECF No. 85-2.) Flynn received a response that treatment was "determined
25  unnecessary" at this time. (*Id.*) On May 23, 2019, Dr. Landsman evaluated Flynn who
26  determined that because Flynn was Hepatitis B reactive in addition to being positive for
27  Hep-C that DAA treatment was contraindicated. (ECF No. 87-3 (sealed).) Blood tests
28  conducted on June 24, 2019, revealed a fibrosis score of F3 – "bridging fibrosis". (ECF

1  No. 87-1 at 23 (sealed).) On August 11, 2019, Flynn was enrolled in the Chronic Disease
2  Clinic for Hep-C. (ECF No. 87-1 at 25-26 (sealed).) On April 15, 2020, Flynn's APRI score
3  was 0.76. (Id. at 27.) The same day, a request for DAA treatment was submitted to the
4  NDOC Utilization Review Panel. (*Id.* at 11.) Before the request could be decided, Flynn
5  was released from custody of the NDOC in June of 2020. (ECF No. 85-6 at 4; ECF No.
6  90 at 11.) However, since his release from NDOC custody, Flynn has received DAA
7  treatment. (ECF No. 90 at 5, 11.)

8        Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively monitored Flynn's Hep-C. Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Flynn to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

15        Flynn's opposition primarily focuses on MD 219 and his assertion that medical standards required immediate treatment. (ECF No. 90 at 11-15.) Flynn's opposition reiterates his claim, <u>without any admissible medical evidence</u>, that the delay in providing him treatment for his Hep-C caused him further damage, including cirrhosis. (*Id.* at 15.) To prove deliberate indifference, however, Flynn must show that a delay in treatment <u>caused</u> further injury. *See Jett*, 439 F.3d at 1096. Flynn's own expert witness does not allege that he sustained damage because of the alleged delay. (*See* ECF No. 90-3 at 6) The expert's discussion of harm was in a general section relating to the standard of care, and not directed to Flynn specifically. (*Id.* at 4.)

24        While Flynn asserts he has cirrhosis, aside from his own assertions, Flynn provides no further evidence or support that a delay in treatment for his Hep-C was <u>the cause</u> of any damage or that he in fact has damage. He has not come forward with evidence to show Defendants knew of an excessive risk to his health and disregarded that risk. The evidence before the Court shows Flynn was treated for his Hep-C through monitoring and

other actions and there is no evidence showing that his Hep-C or any delay in providing treatment was <u>the cause</u> of any damage. Therefore, Flynn has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744.

Moreover, to the extent that Flynn's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, Flynn has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, Flynn fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs because Flynn has only shown that he disagrees between alternative courses of treatment, such as being given drug intervention treatment as opposed to having his Hep-C monitored for progression.

Based on the above, the Court recommends that Defendants' motion for summary judgment as to the medical deliberate indifference claim be granted.

B. **Emotional Distress Claims**

In order to succeed on a claim for intentional infliction of emotional distress ("IIED") under Nevada law, a plaintiff must show "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 625 P.2d 90, 91-92 (Nev. 1981). Under Nevada law, a negligent infliction of emotional distress claim ("NIED") by a direct victim has the same elements of an IIED claim, except that the plaintiff need only show that the acts causing distress were committed negligently. *See Abrams v. Sanson*, 458 P.3d 1062 (Nev. 2020).
///

Further, to recover for IIED or NIED, the plaintiff must prove some physical damage. *In Barmettler v. Reno Air*, 114 Nev. 441, 956 P.2d 1382 (Nev. 1998). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Evans v. Lander County Hospital District*, Case No. 3:19-cv-00464-LRH-WGC, 2021 WL 1933933, *6 (D. Nev. May 13, 2021) (quoting *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 226 (Nev. 1998).) Severe emotional distress means stress "so severe and of such intensity that no reasonable person could be expected to endure it." *Id.*

Flynn's IIED and NIED emotional distress claims are premised on his argument that Defendants' denial of treatment was extreme and outrageous and a reasonable jury could conclude that Defendants acted in reckless disregard of whether their denial would cause him severe emotional distress. (ECF No. 90 at 15-16.) The opposition to the motion for summary judgment does not provide any evidence of Flynn's alleged severe emotional distress, except to say that Flynn "will testify at trial." (*Id.* at 16.) This statement alone is insufficient to overcome summary judgment. The Nevada Supreme Court has held, "[i]t is insufficient to allege wrongdoing and cite only the resulting injury. In the face of a summary judgment motion, it is incumbent upon the party opposing it to produce some admissible evidence to show that the alleged tortfeasor acted negligently or intentionally, or failed to act when required to, and that the conduct or the failure to act is the proximate cause of the injuries complained of." *State v. Eighth Judicial District Court*, 118 Nev. 140, 152 (2002). Here, Flynn provides no admissible evidence to show he suffered severe emotional distress because of any negligent or intentional actions on part of these Defendants. Thus, Flynn cannot succeed on his emotional distress claims.

Based on the above, the Court recommends that Defendants' motion for summary judgment as to the emotional distress claims be granted.[4]

///

---

[4] Because the Court finds that Flynn's claims fail on the merits, the Court need not address Defendants' personal participation or qualified immunity arguments.

## V. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 85), be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 85), be **GRANTED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: October 6, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**